**WESTROPP, Plaintiff-Appellant v. E. W. SCRIPPS COMPANY, et, Defendant-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19757. Decided December 12, 1944.

54

Harrison & Marshman, Cleveland, for plaintiff-appellant.
Baker, Hostetler & Patterson, Cleveland, William P. Marsteller, Cleveland, Thomas J. Edwards, Cleveland, Charles D. Johnson, Cleveland, for defendant-appellees.

(Montgomery, P. J., Sherrick, J. of the 5th District, Doyle, J. of the 9th District, sitting by designation in the Eighth Appellate District.

**OPINION**

By SHERICK, J.

Judge Lillian Westropp, one of the duly elected Judges of the Municipal Court of the City of Cleveland, in her amended petition filed herein, claims to have been libeled by the Cleveland Press and its editor, Louis B. Seltzer, in a cartoon published on August 14, 1942; a quarter million copies of which were distributed in its editions of that day.

This cartoon is titled "One on the House." It depicts a bar room scene. Two persons being present. The mirror in the back bar bears the legend "Lil's Lil Place." The front bar is labeled "Judge Lillian Westropp's Bar of Justice." Behind this bar stands a woman shaking a cocktail shaker labeled "Liquor Law Acquittals." Her apron bears the word "Lil." Seated before the bar is a convivial character with a bulbous nose. The back of his coat says "Liquor Law Violator." This character is saying "Gimme one o' your 'not fit for human consumption' acquittal specials, Lil" and "I know your pal, Gerald

Doyle." The facial expression of both characters exhibits mirth. The front bar, minus its foot rail, resembles a small court room judicial bench.

The petition further proceeds to state, that the picture intended it to be understood that plaintiff was personally immoral and corrupt; and that as a Judge, she was corrupt, a bribe taker and willing to sell justice and discharge liquor law violators. It is further specifically pleaded that the intended innuendo deducible from the cartoon's title and back bar legend is that plaintiff's court room is a disreputable place or house of ill fame, like unto that of the notorious literary character known as "Diamond Lil;" and that the front bar legend intends to convey the idea that her court is corrupt and a place wherein injustice is judiciously administered; and that the words attributable to the bar patron were intended to mean that in a recent liquor case tried before plaintiff, she had for corrupt and wicked reasons acquitted a law violator, whose trial counsel was her intimate friend.

It is next averred that the cartoon was intended to cast hatred, contempt, ridicule and scorn upon her, exhibit her unfitness for a position of honor, impair her reputation for probity, morality, honesty and ability as a citizen, lawyer and judge and to forestall her future re-election. She further pleads that the several legends, meanings and innuendoes were wickedly false and untrue, known by the defendants to be such, and were published with calculated malice with intent to cause grievous harm to plaintiff and to advance the newspaper's pecuniary interests; and that she has sustained serious and irreparable harm to her reputation as a citizen, lawyer and judge, and suffered great embarrassment and humiliation by reason thereof.

Defendants jointly answer plaintiff's pleading. After admitting its formal averments and publication of the cartoon, they proceed to say that on August 2nd, a notorious character, one Weinzimmer, together with others, were arrested and charged with operating a place where whiskey was sold in violation of city ordinance and state law; that Weinzimmer was to have appeared before the court the next morning, but that his counsel, Gerald Doyle, procured of plaintiff a continuance to August 11th, at which time Weinzimmer's case proceeded to trial; and that on conclusion of the state's case, plaintiff, as judge, discharged Weinzimmer on his counsel's motion, because the prosecution had failed to prove that the liquor charged to have been possessed and sold 'was fit for beverage purposes.' Defendants further plead that prior to and con-

currently with the publication of the cartoon, the Scripps Company published certain news articles in its editions, regarding the occurrences in the Weinzimmer case, and that each of said articles truthfully represented the happenings in a case publicly heard in a branch of the municipal court. A copy of these articles are attached to and made part of their answer. They further say that Weinzimmer's counsel, Gerald Doyle, was plaintiff's friend, and that he had been active in plaintiff's judicial campaign. It is averred "that the cartoon fairly portrayed the justifiable opinion of the Cleveland Press, based upon facts occurring in the Weinzimmer cases and the actions of the plaintiff therein, and that said facts had been theretofore or were concurrently truthfully published."

As a second defense, defendants say that publication of the cartoon "was the publication of a fair and honest discussion of comments on or criticism of a matter of public interest and that such publication was made only after due diligence had been exercised by defendants to ascertain the truth of the facts on which the comment or criticism was based and that such publication is therefore privileged."

A third defense states that publication "was made after due diligence to ascertain the truth on which the comment was based with good motives and for justifiable ends and was fair comment on the official conduct of a public officer and is therefore privileged."

The fourth defense avers that publication "was based upon information received from sources which it believed to be reliable."

The reply admits that defendants published the articles pleaded, but denies that they truthfully and fairly repeat the circumstances or events of the Weinzimmer hearing, and trial, or that they fairly portray the justifiable opinion of the Cleveland Press.

So stood the issues at trial. The jury returned a verdict in defendant's favor and upon which judgment was entered and from which plaintiff now appeals on numerous questions of law, nearly all of which go to the trial court's theory of the law applicable and its charge to the jury.

Appellant complains of the court's general charge in six respects. And inasmuch as the fifth specification thereof is in the main determinative of the preceding four, we shall first consider it. Plaintiff would have it that the court should have instructed the jury that the cartoon was libelous per se, that is, as a matter of law, and that when it submitted that ques-

tion to the jury as a matter of fact, it grieviously erred. It will be recalled from plaintiff's petition that the claimed libel is predicated solely upon the cartoon, and thereafter innuendo is resorted to, to charge falsity, malice, intent to defame and special damage, all four of which are inferable if the picture is libelous in and of itself. Or is it only libelous per quod? If the latter be true, then the trial court did not err.

The general rule is found stated in 33 Am. Jur. 220, Sec. 224, that:

"Since the office of the innuendo is merely to explain, the authorities agree that it cannot be used to aver a fact, introduce new matter, or alter, enlarge, extend or restrict the import of the language theretofore set out."

It is therefore our judgment that when plaintiff resorted to explanation by innuendo to establish her version of the intent of the cartoon with its legends, she conceded that different minds might draw different conclusions therefrom. In other words, she admits ambiguity therein. As is said in Shaw Cleaners & Dyers v Des Moines Dress Club, 245 N. W. 231, 215 Iowa 1130; 86 A. L. R. 839:

"Words which are libelous per se do not nee dan innuendo; and conversely, words which need an innuendo are not libelous per se."

Defendant's evidence which comports with their pleading, tends to establish an entirely different aspect to such innuendoes as are reasonably deducible from the cartoon and its legends.

The trial court charged the jury that there was a total absence of proof of any immorality on the part of Judge Westropp or that her court room was a disreputable place. The record substantiates this fact and the correctness of the court's instruction. A further matter testified to by plaintiff and not subject to dispute, is that she attempted to follow what she considered as a precedent set by her superior, the Eighth District Court of Appeals, whose personnel is now completely changed, in **Hendershot v State, 14 Oh Ap 430.** With these two observations in mind, together with the fact that the other seven district appellate courts in the state, as evidenced by their reports, were then far more liberal in the quantum of proof necessary to establish that liquor illegally possessed and sold was "fit for human consumption"; we now propose to analyze defendant's evidence with respect to the

innuendoes deducible from the cartoon as they say was intended.

Defendants proved that the prosecution in the Weinzimmer case had offered proof that he was a law violator; that the place was unlicensed; that the liquid possessed and served a crowd of patrons when the raid was made, smelled and tasted like whiskey; that some exhibits were seized and analyzed and found to contain alcohol in excess of that allowed to be sold without permit; that the bartender proceeded to destroy evidence; but when the city chemist stated. that he had not examined the state's exhibits for poisons allergic to the human body the court proceeded to discharge Weinzimmer upon his counsel's motion for the reason that the state had failed to prove that the liquid was fit for human consumption.

Defendant's claim that their evidence in substance establishes that they, through the medium of the Cleveland Press, and its cartoons, were fairly and honestly attempting to ridicule and criticize and correct the rule of the Hendershot case, as applied by 'Judge Westropp in the Weinzimmer case because it was an unsound precedent, inimical to law enforcement and public welfare; that in so doing, even if it did lampoon Judge Westropp, they were performing a public service under a qualified privilege. Hence, it is perceivable that the cartoon is susceptible of an entirely different innuendo than that claimed and explained by the plaintiff.

In the recent case of Cartman v Hedgpeth, — Texas — 157 S. W. 2nd 139; 138 A. L. R. 666, it is held that:

"if he language actually used by the defendants - - - admits of no ambiguity the innuendo averments were of no avail" - - - but - - - "if it presents ambiguity it is tested by what effect the language would have upon the mind of the ordinary reader and it would be for the jury to determine whether to such ordinary mind it suggested what plaintiff in his innuendo averments, claims it suggested."

Lancour v Harold and Globe Assoc. — Vt. —; 17 Atl. 2nd 253; 132 A. L. R. 486 (491) conforms to this rule wherein the court says, that:

"If such language is ambiguous and admits of more than one meaning, it is, when necessary to ascertain the meaning, for the jury to say what it means; but if the language is not ambiguous, and does not admit of more than one meaning, it is for the court to say what it means."

We therefore hold that the cartoon and its legends were not libelous per se, and that the court properly submitted this question of mixed law and fact to the jury.

Specifications of error one to four complain in that the court charged the jury that the burden of proof was upon plaintiff to establish falsity, intent, damage and malice. It is, of course, the general rule that he who affirms must prove, unless as in libel per se, one is advantaged by presumptions which spring from libelous documents which are clearly so, without explanation or innuendo. If, as in the present instance, the libelous matter is susceptible of more than one understanding and is therefore ambiguous, the presumptions disappear and the general rule ought to and does apply. We believe that this understanding is generally held to be true in the matter of proof of malice and damage. These subjects are considered in 33 Am. Jur. pages 247 and 264, sections 266 and 282. Therein the author states that:

"In actions for defamation, the courts ordinarily indulge a prima facie presumption that defamations which are actionable per se are malicious. In case of defamations which are actionable only per quod, malice is not implied in law, but must be shown."

"Where defamation is actionable only per quod, proof of special damages - - - and the burden of showing such damages - - - rests upon the plaintiff."

The burden of proof upon the issue of falsity in libel per quod is less generally settled due in part to a failure to distinguish between civil and criminal libel wherein any such presumption is or ought to be countered by a presumption of innocence; and by a failure of some jurisdiction to perceive any distinction between actions per se and per quod; or to take cognizance of the fact that where a defendant has made out a case of qualified privilege, undisturbed by any proof of express malice; or in those jurisdictions where truth is made a complete defense to such charges. To us, however, it seems the better rule that the general one be followed in per quod cases where proof has been made by a defendant which tends to establish the defense of qualified privilege. Why ought this not to be so? If a plaintiff is permitted to recover he should do so upon the strength of his own case. He should prove the issues that are essential to his right of recovery. We see no sound cause for extension of the rules except in per quod cases when the reason therefore in cases per se is no longer present.

Appellant argues strenuously that it is ridiculous to re-

quire a plaintiff to prove falsity and at the same time, place the burden of proving truth upon the defendant. It is true that each is the converse of the other, and that it does seem strange that one party be required to prove the affirmative and the other litigant to prove the negative of the same issue. But is it not the fact that plaintiff loses sight of the jury's prerogative in cases based on innuendo which are ambiguous to determine whether or not the defamatory matter is actionable per se or per quod? If it should find the former, then falsity is presumed and plaintiff need not prove it; but if defendant proves qualified privilege, plaintiff may not recover unless plaintiff prove express malice. Neither may plaintiff recover if defendant proves the defamatory matter to be true. But if in such a case the jury find the matter to be libelous per quod, plaintiff must prove falsity to insure recovery. However, if defendant cannot establish privilege, he still has a second defense, that is, the truth of the matter published. Truth is an affirmative defense. Its interposition is not compulsory. If defendant would avail himself thereof, he should be made to prove the issues. In the final analysis, the jury must weigh all the evidence and find if plaintiff proved falsity or defendant proved truth. It cannot find both to be true. If it find falsity proven, the defendant's issue of truth must of necessity be negatively resolved and plaintiff will prevail. We do not perceive anything incongruous in such a course. The jury herein seems to have encountered no difficulty.

With respect to the claimed error in the court's charge that the burden was improperly placed upon plaintiff to prove that defendant published its cartoon in furtherance of an intent to injure her character and reputation; it must be kept in mind that plaintiff in six of the eight paragraphs of her stated cause of action specifically charged that all of which she complained was done by defendants and "intended" by them to injure her.

A seventh paragraph infers a like motive. She not only prays for compensatory damages but for punitive damages as well. The element or issue of intentional injury is of considerable importance in the award of punitive damages. It may and should play an important part in determining the amount thereof. Plaintiff vehemently stressed that charge and made it an issue which defendants were compelled to meet. We do not think that plaintiff should be heard to now complain of that which she provoked. The rule is that where a litigant leads a court into commission of error, that party may not be heard

thereafter to complain thereof. A second reason suggests itself. Surely where one relies on innuendo, that which was intended to be inferred therefrom is so closely related to the issuable elements of libel as to be inseparable therefrom.

Neither does this court find that the trial court erred in failing to separate and define the issues of the case. There was no mere reading of the pleadings. We think the court in view of a dirth of supreme court precedent, did a creditable job in its instructions to the jury on the law which should govern its deliberation. It correctly defined the issue. If it is subject to any criticism it is one of sequence rather than a non-conformance to the rule of the Lockwood case. Counsel were asked at the conclusion of the charge if they had any suggestion. The replies to the query were "None, Your Honor."

Appellant next complains of the court's refusal to give plaintiff's special requests Nos. 2, 6 and 7 before argument.

Request 2 is rather long. It has to do with plaintiff's theory that if the jury found that the cartoon was intended to depict Judge Westropp as a corrupt judge devoid of judicial integrity that the jury's verdict must be for plaintiff. It is predicated on plaintiff's theory that she need not prove falsity, which is contrary to what this court has hereinbefore held, and that defendant could only be relieved from liability upon proof of the defense of truth. It entirely ignores the issue of qualified privilege proof of which would likewise require a verdict in defendant's favor. For the two reasons indicated, we hold the request to have been properly refused.

Request No. 6 reads:

"With respect to the defense of privilege, which is pleaded by the defendant, I say to you that there is no privilege with respect to the report of a judicial proceeding, unless the report is accurate and impartial in its account of what actually occurred in the proceeding"

This charge was correctly refused for several reasons. The only defamatory matter of which plaintiff complained was the cartoon, which is clearly not a report of a judicial proceeding. She did not aver that the prior and contemporary news articles were libelous, which defendants claimed and proved were a true and unbiased report of a judicial decision. What the defendants did actually plead was that the cartoon fairly portrayed the justifiable opinion of the Cleveland Press

upon the facts of the Weinzimmer case and the court's action thereon, and that it fairly and honestly exhibited its criticism on a matter of public interest and was fair comment on the official conduct of a public officer.

Request No. 7 is in this language:

"While it is the right of the press, as it is of individuals to freely criticize and comment upon the official action and conduct of a public officer, false and defamatory words spoken or published of him as an individual, are not privileged on the ground that they related to a matter of public interest, and were spoken or published in good faith."

This request is a correct statement of law where a plaintiff has pleaded and proved that defamatory matter has been published of a public officer in his individual capacity. It is true that plaintiff pleaded that the cartoon libeled her in that an innuendo deducible therefrom depicted her as an immoral and corrupt woman conducting her court room in a disreputable manner as a house of ill fame. No tendered evidence in proof of any such innuendo was received in evidence. No proof of the pleaded issue having been made it should be clear that the request was not responsive to an issue that the jury must solve. It was therefore properly refused. We note that the court in it general charge specifically cautioned the jury to disregard the matter of personal defamation for the reason no proof had been made thereof.

Appellant however, further urges that this request was proper because of another error committed by the trial court. During the course of trial, evidence was introduced to establish how the cartoon came into existence. It was shown that a free lance artist drew it. When first offered to the Press the legend on the back bar read "Diamond Lil's place." Editor Seltzer refused to purchase and publish it until the word "Diamond" was removed, because he wanted the cartoon directed exclusively to the court and no place else. It further appears that a motion picture, starring an actress specially talented in emotional roles and known as "Diamond Lil" had previously been shown in Cleveland. This picture so plaintiff says, showed bar room scenes where prostitutes congregated and depicted "Diamond Lil" as its proprietor; and that the Press advertised and commented unfavorably upon this picture.

It is apparent that plaintiff was seeking by this line of evidence to develop her pleaded innuendo and make proof

thereby that the cartoon was defamatory of her character as an individual. It is equally clear that in order to accomplish this purpose, plaintiff as a fact must write into the cartoon's back bar legend the word "Diamond" which does not appear in the picture, and which editor Seltzer refused to purchase and publish until the word was deleted therefrom. This last fact is not controverted.

Here is a definite attempt to use the office of an innuendo, not merely to explain, but to enlarge and extend the import of the claimed defamatory language contrary to the general rule hereinbefore quoted from 33 Amer. Juris. 220, Sec. 224. Except as to proof of origin of the cartoon he court instructed the jury to disregard this evidence. We think that the court was right in so doing.

It is maintained that the trial court committed further error in its refusal to permit the introduction of a subsequent editorial which plaintiff claims exhibits defendant's malice toward plaintiff. This editorial has been made the subject of a second independent action. It concerns an entirely unrelated matter. It is styled "Blood on our Judges." It reproaches and criticizes four municipal court judges, one of whom is Judge Westropp, for granting continuance in a criminal case against one Spruiel, a notorious Cleveland vice figure. During the course of these continuances, Spruiel killed one person and wounded a police officer. If this editorial exhibits malice, even though it be in an unrelated matter, it was of course admissible for that purpose. The trial court exhibited a knowledge of the fact that our supreme court had so held. See pages 90 to 94 of the record. When these pages are examined, it appears that during the statement of plaintiff's case by her counsel, reference was made to the "Blood on our Judges" editorial. Whereupon defense counsel stated that they were not ready to try the second case, and if this evidence was to be admitted, then defendants were asking for a continuance. The record is not explicit; however, it is reasonably clear that the court was disposed to grant a continuance. Counsel for plaintiff evidenced an intention to waive the point and trial proceeded.

On pages 175 to 179 of the record, plaintiff's counsel proceeded to state that he again wished the record to show that he renewed his application to the court for permission to show for a limited purpose only of establishing malice, the "Blood on our Judges" editorial. Defendants objected and the court sustained the objection.

To this claimed error, our first comment is, that it is totally inconsistent with appellant's prior claim on the burden of proof on the issue of malice in the court's general charge. Second, plaintiff's counsel seemingly acquiesced in the court's conclusion made during plaintiff's statement of her case; at least the court and opposing counsel were so led to believe. This being true, it was hardly proper that plaintiff again insist upon the editorial's competency. To our notion that had ceased to be the major question. It had become one of court ethics. We think the court was entirely within his rights in refusing its admission.

Appellee informs us that there is but one reported case Gambrill v Schooley, 95 Md. 260; 52 Atl. 500, which considers the question of admissibility of a prior or subsequent defamatory statement for the purpose of proving malice, when it is the subject of an inedependent pending action for defamation. We find no other. The conclusion expressed by the Maryland court that such is not admissible appeals to this court as a fair exception to the general rule adopted by our supreme court, which has never considered the precise point confronting this court.

If appellant is permitted to insist upon the document's admissibility, then two or more libel actions may without consolidation be tried in each of the two or more cases. At least the principal issue of malice may be so tried. It might well inflame the juries and result in unconscionable verdicts which a court's cautionary charge could only remedy by entering remittitures or by granting new trials. It would also promote confusion. It would require the trial court to find as a matter of law that the subject matter of the second pending action not then being tried was libelous per se in advance of trial. If it were not defamatory on its face without the aid of innuendo, it would hardly be fair proof of malice. There are a number of instances when tendered evidence is competent and relevant to the point in issue, but is not received in evidence for obvious sound reason.

It is finally urged that the verdict is against the weight of the evidence and that a new trial should have been granted. We do not so find.

We find no error in this case prejudicial to the rights of the appellant. The judgment may be affirmed.

MONTGOMERY, P. J. and DOYLE, J., concur.