KATZ, APPELLANT, *v.*
ENZER, APPELLEE.

(No. C-840289 — Decided May 1, 1985.)

*Gene I. Mesh* and *Mark Huller,* for appellant.

*Stephen A. Bailey,* for appellee.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County.

The appeal in the case *sub judice* brings into question the jury's resolution of a defamation action in favor of the defendant-appellee, Charles Enzer, following a trial in the court of common pleas. In reviewing the six assignments of error presented by the plaintiff-appellant, Ida Katz, we must examine, *inter alia,* the validity of a series of evidentiary rulings made by the trial judge, the denial of a motion for a partial directed verdict at the conclusion of the plaintiff's case, and the judge's refusal to give a jury instruction on one of the matters allegedly in dispute at trial.

A recitation of the factual background of the controversy between the parties is essential to an understanding of the questions now before us on appeal. In the most general of terms, the dispute may be viewed as one inherent in the sometimes indistinct lines that mark the separate but related professional disciplines of social work, clinical psychology and psychiatry. On the one side, there is appellee Enzer, a licensed doctor of medicine who has specialized in the board-certified practice of psychiatry since 1972; and on the other side is appellant Katz, a certified social worker with a master's degree in that field who has maintained a private counseling practice in Cincinnati for a number of years.

Enzer and Katz met for the first time in 1973 when each participated in a seminar on human sexuality sponsored by the college of medicine at the University of Cincinnati. In the course of the seminar, it became evident that the parties disagreed sharply on the methodology for discussing the subject at hand with the medical students then in attendance. Of particular concern to Enzer was the way in which Katz seemed to draw repeatedly on her own sexual experiences when making a point to the students. His objections to this approach, which he considered to be professionally repugnant, grew so vehement that he later expressed his views on the unacceptability of Katz's methods to various members of the medical school faculty.

The episode that prompted the filing of the defamation action in the court below came about somewhat coincidentally several years after the initial encounter at the seminar, in an entirely different setting. In the spring of 1977, Enzer happened to come across one of the newsletters periodically distributed to members of the Jewish congregation in which he worshipped. As he read the letter, his attention was drawn especially to an item announcing that Ida Katz would be speaking before a women's group within the congregation on the subject of biofeedback. In connection with the announcement, there appeared a statement describing Katz as one engaged in the treatment of "individuals, groups, families and marital peers with emotional problems."

According to Enzer, the newsletter served to foster what had been a lingering suspicion theretofore grounded only in his negative impressions of the seminar encounter and in various rumors circulating through the community, *viz.*, that Katz had overstepped the bounds of a practice devoted to social work and had begun to encroach on a field reserved exclusively for those trained and licensed in psychology. In an effort to learn more about her educational background and qualifications, he contacted an investigator on the staff of the state agency responsible for the licensing of psychologists and was given certain information that led to the composition of the following letter:

"I am writing to thank you for sharing with me that Ms. Katz is not a licensed psychologist in our community and that on January 10, 1977, she did plead no contest to the charge by the State Medical Board that she was practicing and advertising as a psychotherapist without any such qualifica-

tions; and that the court did indeed find her guilty as charged.[1] Additionally, I appreciate your letting me know that her 'diploma' [a doctoral degree in psychology issued by an institution known as Heed University] is bogus in that it comes from a so-called 'diploma mill' where one obtains such through correspondence courses and is not an accredited institution.

"Because she appears to be continuing to present herself to our community as one qualified to 'treat' those who have emotional problems, I am enclosing a most recent announcement to this effect [the congregational newsletter] for your further investigation."

Although the letter was directed specifically to the investigator for the State Board of Psychology, Enzer made sure that copies were distributed to those members of his congregation who had already heard him discuss the various points addressed in it. In addition to his dissemination of the contents of the letter, Enzer took it upon himself to call the owner of the home where Katz was scheduled to speak, and in the course of their conversation, he stated that Katz was not licensed in the field of psychology, and that she did not possess the qualifications necessary for the kind of practice in which she was engaged.

The denouement of Enzer's revelations about Katz to the members of his congregation came in two parts. The first in point of occurrence was the congregation's cancellation of Katz's speaking engagement, but the more significant of the two from our standpoint was the commencement of the defamation action against Enzer. Casting her complaint in two counts, Katz alleged that the various statements concerning her professional life were made falsely and maliciously, that Enzer had intended to

[1] According to the record, Katz was convicted in municipal court only of holding herself out as a licensed psychologist. Although she was separately charged with the unlicensed practice of psychology, she was never found guilty of that offense.

bring about "scandal, hatred, ridicule and disgrace," as well as a loss of professional reputation and esteem, and that his defamatory remarks provided the basis for an award of compensatory and punitive damages totalling $1,000,000.

In the opening stages of the proceedings in the court below, there arose some question as to whether the dispute between the parties would ever reach the point of trial. As discovery progressed, counsel for Enzer at least temporarily forestalled the litigation by moving successfully for summary judgment pursuant to Civ. R. 56. In *Katz v. Enzer* (Mar. 25, 1981), Hamilton App. No. C-800105, unreported, however, we reversed the order dismissing Katz's complaint, holding that there remained a genuine issue of material fact as to whether Enzer's statements came within one of the qualified privileges recognized in the law of defamation. It was only as a result of our mandate on appeal that the case was ultimately tried before a jury on remand and resolved by the general verdict in favor of Enzer. Judgment was entered in accordance with the jury's finding on March 13, 1984, and this second appeal followed on April 10, 1984.

In the first of the six assignments of error given to us for review, Katz challenges the trial judge's refusal to admit into evidence testimony and exhibits relating to incidents that occurred at times subsequent to Enzer's allegedly defamatory remarks. The proffered evidence should have been submitted for the jury's consideration, she reasons, because it tended to prove the sort of harassment, ill will or spite necessary to establish the material element of actual malice.

In a defamation action such as this where the defense relies, at least in part, on the qualified privilege that is said to arise from communications made in good faith concerning a matter in which individuals share a common interest or duty, proof of actual malice is essential to the plaintiff's success on the merits. *Evely v. Carlon Co.* (1983), 4 Ohio St. 3d 163; *Hahn v. Kotten* (1975), 43 Ohio St. 2d 237 [72 O.O. 2d 134]; *West v. Peoples Banking & Trust Co.* (1967), 14 Ohio App. 2d 69 [43 O.O. 2d 197]. To establish actual malice, it must be shown that the defendant acted either with knowledge that his statements were false or with reckless disregard as to whether they were true. *Fawcett v. G. C. Murphy & Co.* (1976), 46 Ohio St. 2d 245 [75 O.O. 2d 291]; *Creps v. Waltz* (1982), 5 Ohio App. 3d 213; *Hinton v. Liberal Markets, Inc.* (May 6, 1981), Hamilton App. No. C-800284, unreported.

One of the accepted methods for demonstrating knowledge of falsity or reckless disregard of truth is, to some extent, inferential. If the plaintiff can adduce competent evidence at trial tending to show that the defendant was motivated by ill will, spite, grudge or some ulterior motive, the trier of fact may then reasonably conclude that the standard of actual malice has been satisfied. *Hahn v. Kotten, supra,* at 248 (quoting from *DeAngelo v. W. T. Grant Co.* [App. 1952], 64 Ohio Law Abs. 366, 370).

In the case *sub judice,* the theory of actual malice advanced by Katz at trial was precisely the one articulated in *Hahn.* To substantiate the theory, she attempted to document for the jury a course of conduct on Enzer's part, beginning with the seminar encounter at the medical school and extending over a period of years, that cast a shadow of ill will and spite over the remarks she alleged to be defamatory. Enzer would now have us hold that those efforts were doomed to fail insofar as they entailed the presentation of evidence concerning incidents that took place several years subsequent to the remarks in question. Such evidence was not, in his view, relevant to the question of whether actual

malice existed when the statements were made in 1977.

In our judgment, the standard of relevancy proposed by Enzer is unduly restrictive, and its adoption, as a matter of general principle, would not serve the best interests of justice. As we see it, the more reasoned approach, and the one we endorse today, is to provide for the admissibility of subsequent words or acts tending to show ill will, spite or malice on the part of the defendant so long as the evidence can be linked reasonably to the defamatory statements at issue as part of a continuing course of conduct. See, generally, 35 Ohio Jurisprudence 3d (1982) 581, Defamation and Privacy, Section 148. See, also, *Westropp* v. *E. W. Scripps Co.* (1944), 76 Ohio App. 463, 476 [32 O.O. 214]; *Katz* v. *Enzer, supra.*

With this in mind, we turn to the three specific instances identified by Katz in the case at hand as erroneous rulings that precluded the use of relevant evidence bearing upon the issue of actual malice. The first ruling concerned statements made by Enzer to one of his former patients in 1980. According to the record, the patient would have testified that he observed animosity in Enzer's attitude toward Katz, and that Enzer specifically stated to him that Katz did not have a license and should not have been practicing. In the second instance, the judge ruled that an advertisement placed by Enzer in a local newspaper in 1979 was inadmissible. According to the tender made for the record in the wake of the ruling, the exhibit offered the prospect of employment in the capacity of "psychotherapist" to a clinically experienced social worker holding a master's degree.

In our estimation, both the testimony and the exhibit should have gone to the jury as legitimate parts of the body of evidence adduced in support of Katz's claims. Enzer's statements to his former patient were unquestionably relevant to the issues in dispute in the sense that they tended to substantiate Katz's theory that the alleged defamation took place in the context of a discernible course of conduct characterized by ill will, spite and malice. Although perhaps less apparent, the relevance of the newspaper advertisement was entitled to similar recognition. If nothing else, it tended to support an inference of malice by placing Enzer's willingness to employ one having the same credentials as Katz in the position of pyschotherapist in juxtaposition to his assertions that Katz was not qualified to practice in areas outside what he considered to be the limited discipline of social work.

The same conclusion, however, does not apply in the case of the trial judge's third evidentiary ruling, which precluded the use of an article written by Enzer for a publication of the American Academy of Child Psychiatry in 1984. The article was devoted, in major part, to a discussion of the steps available to strengthen a practice in child psychiatry and referred only in passing to the competitive effect of the trend in some states to broaden the range of services offered by social workers. In our judgment, this brief reference to social work was of such marginal value in relation to the issue of actual malice on the part of Enzer that the trial judge was entitled, in the exercise of his sound discretion, to exclude the article from evidence. Evid. R. 103(A); Evid. R. 405(B).

In view of the foregoing analysis, we must conclude that relevant evidence was improperly withheld from the jury in two of the three instances brought to our attention by Katz. Her first assignment of error is, therefore, well-taken in part.

Katz next asserts that the trial judge erred by refusing to direct a verdict in her favor with respect to at least one of the material issues in the case, *i.e.,* whether Enzer's various statements concerning her professional life were

false and defamatory. That issue, we are told, was addressed specifically in the first appeal from the trial court's order granting summary judgment, and its resolution in favor of Katz became a part of the law of the case. Katz concludes, therefore, that when the case was remanded to the trial court, the judge was bound to our determination that Enzer's statements were defamatory as a matter of law. In her view, any determination to the contrary, such as that implicit in the judge's refusal to grant a directed verdict at trial, can only be construed as error resulting from a failure to implement fully our mandate on appeal.

In our judgment, the claims asserted by Katz in her complaint brought two central issues into dispute. Without question, the initial issue was whether Enzer's remarks were, from a legal standpoint, defamatory in nature. Beyond this threshold, however, stood the separate issue as to whether the remarks fell within the qualified privilege to which we have already referred in our discussion of the first assignment of error. It was in this latter respect that a showing of actual malice on the part of Enzer became essential to the success of Katz's case at trial.

As we stated in the first appeal from the order awarding summary judgment to Enzer, a statement is considered defamatory in Ohio if it is made falsely and maliciously " 'with the intent to injure a person's reputation or to expose him to public hatred, contempt, ridicule, shame or disgrace, or to affect him adversely in his trade or profession.' " *Katz* v. *Enzer, supra*, at 4 (quoting from *Thomas H. Maloney & Sons, Inc.* v. *E. W. Scripps Co.* [1974], 43 Ohio App. 2d 105, 107 [72 O.O. 2d 313]). Although we went on to note that, given the state of the record, Enzer's statements about Katz were defamatory, *id.* at 5, our ultimate decision to overturn the award

of summary judgment was limited specifically to the holding that genuine issues of material fact with respect to the existence of actual malice precluded Enzer from invoking a qualified privilege to shield his remarks as a matter of law. *Id.* at 10.

To arrive at that particular holding, it was not essential to conclude as a matter of law that Enzer's statements were of a defamatory character. In view of the narrow posture of the case, all that was necessary to support the ultimate determination was a material issue concerning the existence of otherwise actionable defamation. Under these circumstances, we are persuaded that any remarks in our prior decision characterizing Enzer's statements as defamatory in law must be read as dicta, and not as a part of the law of the case. For this reason, it cannot now be said that the trial judge erroneously refused to follow our mandate on remand when he denied Katz's motion for a partial directed verdict. On the state of the evidence in this record, it is clear that any question concerning the defamatory nature of Enzer's statements was properly reserved for the jury. The second assignment of error is without merit.

In her third and fourth assignments of error, Katz challenges both the trial judge's refusal to admit into evidence any testimony concerning the function of a social worker in the field of professional counseling, and his failure to include in the final jury instructions some definition of the accepted bounds for the practice of social work. For the reasons that follow, we must conclude that each of these claims has merit.

As we see it, one of the questions fundamental to any assessment of the actionable nature of Enzer's remarks about Katz's professional training and qualifications was whether Katz had, in fact, strayed beyond the field of social work and engaged in the practice of

psychology.[2] To resolve this question at trial, it was imperative for the jury to know how the practice of psychology was defined by law in Ohio, R.C. 4732.01(B), to be aware that there was a licensing requirement in effect for anyone engaged in such a practice, R.C. 4732.21, and to consider the fact that Katz was not licensed as a psychologist. Although the record makes clear that these aspects of fact and law were made a part of the case at trial, there still remained, in our judgment, significant gaps in the framework necessary for a complete understanding of the issues in dispute.

At the very least, we believe that the jury should have been permitted to hear testimony from qualified witnesses concerning the accepted endeavors in which a social worker with Katz's training regularly engages in practice. Beyond this, we are further persuaded that the trial judge should have instructed the jury on that part of the law in Ohio exempting social workers functioning in their capacity from the licensing requirement made applicable to psychologists. R.C. 4732.22(G). In our minds, these unaddressed concerns were vital not only to the completion of the task assigned to the jury, but also to a fair outcome of the dispute between the parties. Without them, the jury was less than fully equipped to decide whether some of Enzer's allegedly defamatory statements were, in context, truthful, or whether they were made under circumstances exhibiting actual malice. The third and fourth assignments of error are, accordingly, well-taken.

The fifth assignment of error is devoted to the trial judge's refusal to permit Katz to testify as a rebuttal witness for the purpose of countering certain evidence adduced by Enzer in the defense's case-in-chief. Katz's argument here is that she was the only competent witness in a position to rebut detrimental statements attributed specifically to her as part of defense counsel's direct examination of a witness who had investigated charges that she had unlawfully engaged in the practice of psychology.

According to the record, the subject of Katz's aborted attempt at rebuttal was a remark suggesting that she had engaged in the treatment of patients by prescribing various forms of medication. Because this testimony was unquestionably first brought to light in Enzer's case and bore directly upon the material issue of whether Katz had, in fact, overstepped the bounds of a practice in social work, we are convinced that it should have been incumbent upon the trial judge under R.C. 2315.01(D) to provide her with an opportunity in rebuttal to explain or deny the remark. The fifth assignment of error is, accordingly, well-taken.

In her final assignment of error, Katz asserts that the trial judge abused his discretion when he declined to grant leave for an amendment of her complaint prior to trial. On the state of this record, we are persuaded that the judge's ruling must stand. His refusal to allow for the addition of two separate counts of defamation was, under the circumstances, well within the discretion afforded to him by law. See *Solowitch* v.

---

[2] We are convinced that the import of Enzer's remarks cannot be limited solely to the fact the Katz did not have the qualifications necessary to engage in the practice of psychology. Although it is beyond cavil that one of his recurring points was that Katz had not been licensed by the state board of psychology, he also plainly conveyed the impression that Katz was, in practice, engaging in pursuits that took her beyond the field of social work. In this sense, it was imperative that the jury be enlightened about the practice of social work to a degree much greater than that permitted by the trial judge.

*Bennett* (1982), 8 Ohio App. 3d 115; *Dept. of Taxation* v. *Cemetery Management Service Co.* (1981), 2 Ohio App. 3d 115. The sixth assignment of error is, therefore, without merit.

With our examination of the six assignments of error presented to us for review now complete, we have determined, in sum, that error occurred at trial in four general respects. Because we are convinced that the cumulative effect of those instances of error resulted in prejudice to Katz by depriving her of a full and fair hearing of the disputed issues at trial, we must reverse the judgment of the court of common pleas and remand this case for further proceedings in accordance with law not inconsistent with this decision.

*Judgment reversed*
*and cause remanded.*

BLACK, P.J., SHANNON and KLUSMEIER, JJ., concur.