Phung, Appellee and Cross-Appellant, *v.* Waste Management, Inc., Appellant and Cross-Appellee.

[Cite as *Phung v. Waste Mgt., Inc.* (1994), 71 Ohio St.3d 408.]

(No. 93–936—Submitted October 11, 1994—Decided December 27, 1994.)

*Murray & Murray Co., L.P.A., Dennis E. Murray, Sr.,* and *Kirk J. Delli Bovi,* for appellee and cross-appellant.

*Vorys, Sater, Seymour & Pease, Thomas B. Ridgley* and *Gail C. Ford,* for appellant and cross-appellee.

PFEIFER, J.

## I

We must first determine whether the trial court abused its discretion when it denied Dr. Phung's request to present the testimony of his sister, Betsy Phung, and his first wife, Faye Phung, to rebut the testimony of WMI's expert witness, Dr. Elissa P. Benedek. For the following reasons, we conclude that the trial court abused its discretion.

## A

When Dr. Phung's counsel indicated he would be calling the two witnesses, counsel for WMI objected, contending that the witnesses' rebuttal testimony would be cumulative and, thus, unnecessary. Additionally, WMI argued that Dr. Phung was precluded from presenting the witnesses because they were not on a witness list. We disagree with both of WMI's contentions.

### 1

#### Cumulative Nature of Testimony

WMI contends the trial court was not required to permit Dr. Phung's sister and his first wife to testify because the two witnesses in their testimony would address those matters that Dr. Phung was permitted to address during his rebuttal testimony. Thus, WMI contends that the testimony of the two witnesses would have been cumulative and unnecessary.

Dr. Phung's counsel offered the testimony of Betsy Phung and Faye Phung, among other things, to rebut Dr. Benedek's testimony. During trial, Dr. Benedek concluded that Dr. Phung's delusional condition was caused and began to evidence itself prior to Dr. Phung's employment with WMI. Dr. Benedek based her conclusion on certain facts that she had learned from conversations

with Dr. Phung and that she believed to be true: Dr. Phung had observed dead bodies when living in Viet Nam, Dr. Phung had threatened and beaten his first wife, Dr. Phung's immigration had been a stressful occasion, and Dr. Phung had disputed the parentage of his first son when the child was born. Dr. Benedek believed these facts learned from Dr. Phung to be true because she claimed that she was able to separate fact from fiction as a trained clinician.

While it is true that Dr. Phung's rebuttal testimony contested the truth of these facts relied on by Dr. Benedek, this testimony was of minimal value. One of the few things that the parties agreed to at trial was that Dr. Phung was delusional, living in his own state of reality. Nevertheless, WMI argues that Dr. Phung was the ideal witness to refute the testimony of Dr. Benedek. We disagree. Dr. Phung should have been entitled to present non-delusional, rebuttal witnesses to contest the truth of the facts on which Dr. Benedek relied. The testimony of the two rebuttal witnesses was crucial, not cumulative, and should have been admitted by the trial court.

2

Requiring Rebuttal Witnesses to be on Witness Lists

WMI also contends that it was proper for the trial court to exclude the rebuttal testimony of Faye Phung and Betsy Phung because the two witnesses were not on the court's witness list. We disagree.

A party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief. See *Katz v. Enzer* (1985), 29 Ohio App.3d 118, 29 OBR 133, 504 N.E.2d 427. Because the testimony of the two witnesses fulfills both of these criteria, it should have been admitted by the trial court.

The rebuttal witnesses were introduced to rebut matters first alleged in WMI's case-in-chief. During its case-in-chief, WMI presented Dr. Benedek's testimony to prove an alternate cause of Dr. Phung's delusional condition. The testimony of Faye Phung and Betsy Phung was offered to rebut the factual basis for Dr. Benedek's theory of an alternate cause.

The testimony of the two witnesses was properly offered in rebuttal and not in Phung's case-in-chief. Matters which the plaintiff bears the burden of proving are properly presented in plaintiff's case-in-chief. R.C. 2315.01. In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. See *Reamsnyder v. Jaskolski* (1984), 10 Ohio St.3d 150, 10 OBR 485, 462 N.E.2d 392.

Thus, in this case, Dr. Phung would be required to present evidence that WMI caused or exacerbated his mental distress. The testimony of Betsy Phung and Faye Phung, however, was not introduced to reinforce Dr. Phung's contention that WMI caused his delusional condition; instead, this testimony was offered to rebut WMI's contention that Phung's condition was caused by something other than his employment with WMI. Thus, the testimony of these witnesses was properly offered in rebuttal and not in Dr. Phung's case-in-chief.

Betsy Phung and Faye Phung were proper rebuttal witnesses. Dr. Phung had a right to present their testimony to the extent it rebutted Dr. Benedek's testimony. The fact that counsel for Dr. Phung never placed the names of the two witnesses on the court's witness list is immaterial.

When the trial court deprived Dr. Phung of his right to call a rebuttal witness, it was acting in an unreasonable and arbitrary manner and, thus, abused its discretion.

## B

WMI contends that even if the trial court erred when it refused to allow the two rebuttal witnesses to testify, the error was not prejudicial. WMI argues that even if the testimony of the two witnesses was offered to rebut Dr. Benedek's testimony about the cause of Dr. Phung's mental illness, the jury entered its verdict not because it agreed with Benedek's conclusion that WMI had not caused Dr. Phung's illness but because it found WMI did not breach the standard of care it owed to Dr. Phung. In support of its contention, WMI notes that the jury provided a negative answer to the following interrogatory:

"Do you find that plaintiff has proven by a preponderance of the evidence that defendant intended that its conduct would cause serious emotional distress to plaintiff or that defendant knew, or should have known, that its action would result in serious emotional distress to plaintiff?"

We disagree with WMI's interpretation of the jury's answer to this interrogatory. It is unclear why the jury answered the interrogatory the way it did. The jury could have agreed with Dr. Benedek's unrebutted assessment that Dr. Phung was already delusional when he began to work at WMI. Thus, the jury may have concluded that the employees of WMI could not have known that their behavior would likely cause emotional harm to Dr. Phung. In such a case, the jury would have answered "no" to the interrogatory, despite the fact that the interrogatory was worded to elicit the jury's determination of whether WMI breached its standard of care.

⟨

The negative answer to the jury interrogatory does not conclusively support WMI's contention that Dr. Phung was not prejudiced when the trial court failed to allow the rebuttal witnesses to testify.

Instead, it appears that the absence of witnesses to rebut those facts that Dr. Benedek relied on when she concluded that WMI did not cause Dr. Phung's delusional condition was very prejudicial. Faye Phung and Betsy Phung were the only two non-delusional witnesses at trial who were capable of testifying about those events that Dr. Benedek claimed had caused Dr. Phung's delusional disorder.

The trial court committed reversible error when it failed to allow Faye Phung and Betsy Phung to testify as rebuttal witnesses to Dr. Benedek's testimony.

## II

For the following reasons we determine that the doctrine of *res judicata* precluded the trial court from proceeding to trial on Dr. Phung's dismissed wrongful-discharge claim.

Section 19 of 1 Restatement of the Law 2d, Judgments (1982) 161, sets forth the following rule regarding the impact of *res judicata* when judgment is entered in favor of a defendant:

"A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim."

By applying the Restatement rule to the present case, we hold that our 1988 decision to overrule Dr. Phung's motion to certify the record constituted a valid and final judgment which dismissed Dr. Phung's wrongful-discharge claim.

The fact that our action was not a final disposition of Dr. Phung's entire case—his intentional-infliction-of-emotional-distress claim remained remanded for trial—is irrelevant. The Restatement of the Law 2d, Judgments, *supra*, at 134, Section 13, Comment *e*, states in part that "[a] judgment may be final in a res judicata sense as to a part of an action although the litigation continues as to the rest."

When this court overruled Dr. Phung's motion to certify, *res judicata* precluded the relitigation of his wrongful-discharge claim but allowed his intentional-infliction-of-emotional-distress claim to continue.

Dr. Phung contends that public policy creates an exception to the law regarding finality of judgments and that he falls within this exception. We disagree.

In support of his contention, Dr. Phung notes that since his termination, the General Assembly has enacted Ohio's Whistleblower's Protection Act. R.C. 4113.51 through 4113.53. In oral argument, Dr. Phung's counsel noted that, after

we denied Dr. Phung's motion to certify the record in *Phung v. Waste Mgt., Inc.* (1988), 38 Ohio St.3d 702, 532 N.E.2d 1317, we broadened the public policy exception to the employment-at-will doctrine in *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51. Dr. Phung argues that his case should be reopened and this new law should be applied to his wrongful-discharge claim.

While we acknowledge that there is an exception to the rule of *res judicata* relating to subsequent developments in the law, this exception is extremely narrow and not applicable to Dr. Phung's case. In *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 558 N.E.2d 1178, this court held that:

"Generally, a change in decisional law which might arguably reverse the outcome in a prior civil action does not bar the application of the doctrine of *res judicata*. Since the doctrine of *res judicata* serves important public and private interests, exceptions to the doctrine's application should be narrowly construed." *Id.* at syllabus.

In *Natl. Amusements,* we examined an exception to *res judicata* when there has been " 'a fundamental change in the controlling law.' " *Id.* at 62, 558 N.E.2d at 1180. While we acknowledged the existence of such an exception, we found that it was applicable only to some cases involving changes in constitutional law, such as school desegregation and racial discrimination. *Id.* at 63, 558 N.E.2d at 1181.

The recent developments in the law of wrongful discharge do not fall within this limited exception to the doctrine of *res judicata*. Thus, the court of appeals properly upheld the trial court's determination that Dr. Phung's wrongful-discharge claim had been terminated.

## III

Finally, we note the unfortunate irony of today's decision. Dr. Phung's brave efforts to stop WMI's conduct will go unrewarded. Although Dr. Phung's case catalyzed the General Assembly to enact Ohio's Whistleblower's Protection Act, he will remain unable to obtain recourse through the statute that he inspired. He will, of course, be able to have a new trial on his intentional-infliction-of-emotional-distress claim. The law clearly mandates that the judgment of the court of appeals be affirmed and that this cause be remanded to the trial court.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., A.W. SWEENEY, WHITESIDE, SHANNON, FARMER and F.E. SWEENEY, JJ., concur.

ALBA L. WHITESIDE, J., of the Tenth Appellate District, sitting for DOUGLAS, J.

Raymond E. Shannon, J., of the First Appellate District, sitting for Wright, J.
Sheila G. Farmer, J., of the Fifth Appellate District, sitting for Resnick, J.