OPINION
Plaintiff-appellant, Burrell Industries, Inc., appeals the decision of the Harrison County Court of Common Pleas, finding in favor of defendant-appellee, Harrison Processing Corporation, in its counterclaim for damages.
On March 11, 1994, Burrell Industries, Inc. (hereinafter "Burrell") filed a complaint in the Harrison County Court of Common Pleas, seeking the amount owed on an account with Harrison Processing Corporation (hereinafter "HPC") for the delivery of concrete. HPC's answer alleged that the concrete provided by Burrell was inferior and defective. In addition, HPC filed a counterclaim alleging that Burrell's defective product had caused damage to HPC in an amount exceeding $9,300.
A bench trial was held on October 20, 1997. The testimony at trial revealed the following. In the summer of 1993, Harrison began work on a railroad car unloading facility in Harrison County, Ohio. In order to accommodate the weight of railroad cars filled with coal, the foundation for the facility required concrete with a compressive strength of 3,000 psi (pounds per square inch). Mark McIntyre, plant manager for HPC, testified at trial that he telephoned A-1 Concrete, a division of Burrell, and inquired as to whether Burrell could supply five-hundred yards of 3,000 psi concrete. McIntyre was informed that such an order would not be a problem, but was advised to submit a purchase order. McIntyre issued the purchase order requesting five-hundred yards of 3,000 psi concrete.
Edward Goettel, the superintendent of Lone Pine Construction, the construction company hired by HPC, testified that when the concrete arrived on July 12, 1993, it did not look right. Goettel questioned Burrell's delivery driver who called his office to make sure the concrete was 3,000 psi. The driver reported back that the office had informed him the concrete was 3,000 psi. Still unsatisfied, Goettel then personally called Burrell and was assured by Kevin Richards, an employee of Burrell, that the concrete was indeed 3,000 psi. The concrete was then poured into the foundation.
At the time the concrete was poured, several test cylinders were made for use in subsequent strength testing on the concrete. The samples were tested by Ray McFeaters, a laboratory supervisor for Construction Engineering Consultants. McFeaters testified that all of the samples revealed that the concrete had failed to cure with the required compressive strength and was therefore substandard.
Although HPC paid for the concrete delivered on July 12, 1993, a number of subsequent deliveries were not paid for. According to George Landers, the credit manager for Burrell, at the time of trial HPC had an outstanding balance of $10,602.49, and owed an additional $7,633.97 in account service charges. Following the filing of post trial briefs, the trial court entered its judgment on April 29, 1998. At the same time, the trial court filed lengthy findings of fact and conclusions of law. Specifically, the trial court found that HPC had ordered 3,000 psi concrete, that Burrell had repeatedly assured HPC that the concrete was 3,000 psi, that testing had showed the concrete to be substandard and defective, that HPC had stopped payment on its account with Burrell only after the test results had confirmed the substandard concrete, and that HPC had been damaged in the amount of $15,000. In addition, the trial court found that down time in order to repair the facility would cost HPC an additional $14,000. Accordingly, the trial court awarded $29,000 to HPC, which amount was offset by the $10,602.49 owed on the account, for a total judgment of $19,397.51.
Burrell filed a timely notice of appeal on May 15, 1998 and brings four assignments of error, the first of which states:
 "The Trial Court erred in striking the testimony of Burrell's rebuttal expert whose testimony was presented in response to Harrison's expert who testified with regard to the [sic] Harrison's counterclaim."
Burrell argues that the trial court erred in striking the testimony of Joe Belot, an expert for Burrell. Belot was called by Burrell as a rebuttal witness at the conclusion of HPC's case-in-chief. After Belot began testifying, counsel for HPC objected on the grounds that Belot was not rebutting facts elicited during HPC's case-in-chief, but, rather, was offering an expert opinion that should have been presented during Burrell's case-in-chief. Burrell responded that Belot had been called to rebut the testimony of Regis Leach, whose deposition had been admitted into evidence for the trial court to read at a later time. The trial court reserved ruling on the objection and permitted Belot to testify.
In its findings of fact and conclusions of law issued after the trial, the trial court stated as follows:
 "20. Mr. Belot's testimony was objected to as not being proper rebuttal. The Court reserved ruling until he had read Mr. Leach's testimony. the [sic] purpose of Rebuttal is to contradict facts, not to give expert opinions in chief. That should have been put in in [sic] Burrell's main case. Plaintiff had deposed Mr. Leach and knew what his testimony would be. Therefore, all of Mr. Belot's testimony is objectionable and is stricken as not proper rebuttal."
HPC argues this conclusion by the trial court was error because HPC was only required to present evidence of its account claim during its case-in-chief. According to Burrell, because Belot was used in responding to HPC's counterclaim, Burrell was not obliged to present his testimony during its case-in-chief.
A party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief. Phung v. Waste Mgt., Inc. (1994), 71 Ohio St.3d 408,410. Matters which the plaintiff bears the burden of proving are properly presented in plaintiff's case-in-chief. Id. It is error for a court to deny a plaintiff the right to explain or rebut testimony concerning a material issue which is introduced for the first time during the defendant's case-in-chief. State v. Grinnell (1996), 112 Ohio App.3d 124,147.
Burrell's complaint was an action on an account. An action on an account is appropriate where the parties have conducted a series of transactions for which a balance remains to be paid.Blanchester Lumber Supply, Inc. v. Coleman (1990), 69 Ohio App.3d 263,265. Where the defendant enters a general denial to the allegations of the complaint, the plaintiff must prove all the elements of a cause of action for breach of contract. Id. The elements of a breach of contract claim include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. Doner v. Snapp
(1994), 98 Ohio App.3d 597, 600.
As part of its case in chief, Burrell was only required to prove that it had delivered the concrete in question. The issue of whether the concrete in question was so defective as to constitute non-performance was an issue for HPC to prove during its case in chief, asserted as it was as an affirmative defense in its answer and counterclaim. Because the condition of the concrete was first raised by HPC and was not required to be raised during Burrell's case in chief on the account, it was error to strike Belot's testimony as improper rebuttal.
However, this is not a case where the witness at issue was precluded from testifying. Rather, as noted, Belot was permitted to testify in full, while the trial court reserved its ruling. The testimony was stricken only once the trial itself had concluded. In addition, we note that although the trial court struck the testimony, it did so only after it had fully considered and weighed it. The existence of error does not require a disturbance of the judgment unless the error is materially prejudicial to the complaining party. Fada v.Information Sys. Networks Corp. (1994), 98 Ohio App.3d 785,792. It is well established that errors will not be deemed prejudicial where their avoidance would not have changed the result of the proceedings. Id.
A review of the record in this case demonstrates that the same result would have occurred even if the trial court had not formally stricken Belot's testimony. We base this conclusion on the fact that in the same findings of fact in which the trial court struck Belot's testimony as improper rebuttal, the trial court also noted that it had rejected the bulk of Belot's testimony as being unreliable and lacking in credibility. Specifically, the trial court rejected Belot's testimony in part because the latter testified that there were no strength problems with the concrete, just a flaking problem on the surface, which the trial court found incredible, based on the test results showing the concrete to be substandard. The testimony was also rejected because Belot's opinions were based on HPC having ordered concrete with a compressive strength of 2,500 psi, whereas the evidence clearly established that HPC had ordered 3,000 psi concrete. With respect to Belot's claim that the repairs could be done for $1,500 as opposed to the $15,000 stated in Leach's report, the trial court found that Belot's proposed solution was based on a technique used on bridges, not railroad loading facilities, and that the $1,500 repair estimate was a "guesstimate" that was unsubstantiated. Rather, the trial court stated that in its opinion Belot's testimony was an after-the-fact construction by Burrell to attempt to circumvent their responsibility for damaging HPC's property.
Even if the trial court had not formally stricken the testimony at issue, it is clear to us that the trial court carefully reviewed the testimony but rejected the greater part of it as lacking credibility. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trial court's findings of fact made clear that had the trial court failed to strike the testimony of Belot the result would have been no different. Although the trial court may have erred in formally striking the testimony, we fail to see how Burrell was materially prejudiced thereby.
Appellant's first assignment of error is without merit.
Appellant's second assignment of error states that the trial court erred in permitting testimony regarding damages beyond the $9,395 elicited during discovery. Specifically, Burrell notes that HPC's counterclaim, HPC's answers to interrogatories during discovery, and the 1994 report of Leach all stated that the damages sustained were $9,395. However, at trial, HPC introduced the deposition of Leach taken several days before trial, in which Leach testified that the damages were $15,000. Burrell claims that Leach's 1994 report was never supplemented to include the additional damages. In addition, Burrell notes that at trial McIntyre was permitted to testify concerning the additional $14,000 it would cost HPC to shut the facility down in order to affect the repairs.
In response, HPC claims that not only did it supplement its interrogatory answers with respect to damages, but also complied with Burrell's request that HPC tender its expert for deposition before trial. According to HPC, Burrell conducted a lengthy pretrial deposition of Leach in which the later explained all the items of property damage at issue. Nothing in the record indicates that HPC supplemented its interrogatory responses relating to damages prior to trial, or that it amended its complaint to reflect the updated damages amount. However, at the deposition of Leach on October 14, six days before trial commenced, counsel for Burrell was clearly apprised of the fact that the cost of repairs would be approximately $15,000 at current prices as opposed to the estimate of $9,395 made some three years prior. In addition, Leach stated that his estimate did not include the cost of any down time.
Civ.R. 54 (C) states in pertinent part:
 "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings."
Although the former version of this rule limited damages to the amount sought in the prayer in effect on the sixth day prior to trial, see Bishop v. Grdina (1985), 20 Ohio St.3d 26, 28, clearly such is no longer the case. In addition, a trial court's ruling that certain evidence will be admitted or excluded from trial will not be reversed absent a showing of a clear and prejudicial abuse of discretion. Malone v. Courtyard By MarriottL.P. (1994), 95 Ohio App.3d 74, 92. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
In its counterclaim, HPC sought $9,300 in damages. In 1994 Leach compiled a detailed breakdown of the costs involved in repairing the damage with a repair cost of $9,395. Six days prior to trial Leach stated that his previous estimate had been based on costs, including labor costs, that were substantially lower than the present day costs for said items, and that his updated estimate was around $15,000. In addition, Leach stated that there would necessarily be some downtime costs.
Although HPC may or may not have supplemented their discovery responses, it is clear that Burrell had notice prior to trial that the amount of damages HPC was seeking had increased beyond the $9,300 originally sought. The only evidence concerning damages presented by Burrell was the testimony of Belot that the damage could be cured by pouring a oneinch latex overlay over the concrete in question, for a cost of approximately $1,500. The trial court found that this proposal was appropriate for bridges, not railroad unloading facilities, and ruled that the proposal was an unrealistic guesstimate." Accordingly, we fail to find any abuse of discretion on the part of the trial court in permitting testimony concerning the amount of damages incurred. Appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 "The Trial Court erred in finding that the Defendant was entitled to offset its damages against the $10,602.49 owing on account to Burrell where there was no evidence that the Defendant has actually incurred damages.
Burrell appears to argue that HPC should not have been entitled to offset the damages it incurred from the contract price owed on the account with Burrell because at the time of trial, HPC had not incurred any expenses for repair or replacement of the concrete, and had suffered no disruption of its business. Burrell claims that HPC was required to incur damages prior to adjusting the contract price pursuant to R.C.1302.91.
We need not determine whether the contract at issue is governed by the Ohio Uniform Commercial Code in order to resolve appellant's claim. Burrell concedes that once a buyer incurs damage the amount of the damages may be deducted from the contract price. The evidence clearly establishes that HPC incurred damage when defective concrete was poured into the foundation based upon Burrell's assurances that the concrete was of the required strength. HPC presented estimates for the repair of said damage. Appellant offers no authority, nor are we aware of any, that would require HPC to actually pay for repairs before it could be considered to have incurred damage. Indeed, if such were the case, litigants would be required to provide invoices rather than estimates in seeking compensation for harm done. Accordingly, the trial court did not err in finding that HPC had incurred damage.
Appellant's third assignment of error is without merit.
Appellant's fourth assignment of error states:
 "The Trial Court erred in finding that the limitation of remedies set forth in Burrell's four delivery tickets for July 12, 1993, which were signed as accepted by the Defendant's authorized representative, did not apply and were unconscionable."
Burrell argues that the trial court, pursuant to one of several conditions found on the reverse side of the delivery tickets used for job, should have limited Burrell's liability to the purchase price of the concrete. The specific provision relied on by Burrell states as follows:
 "All claims must be made in writing within twenty-four (24) hours from time of delivery. Our liability shall in no event exceed the purchase price of the materials."
One of the tickets in question appears to be signed by Goettel. The remaining three are signed by Joe Kevech, one of the concrete finishers employed by Lone Pine. With respect to the delivery tickets, the trial court stated in its findings of facts as follows:
 "12. The simple signing of delivery tickets by Lone Pine's workers at the scene, which were later altered by Burrell's people, does not constitute any agreement by Harrison to any condition on the back side thereof, nor any waiver of rights."
In its conclusions of law, the trial court continued as follows:
 "10. The invoices were not signed by Harrison, as Burrell's representatives admit. They are not binding on Harrison.
 "11. The damages inflicted on the real property of Harrison cannot be limited as requested by Burrell. Harrison did not agree to any such limitation. And, since this was to be a fixture upon realty, R.C. § 1302.93 would not apply. Even if it did, it would be unconscionable to do so, see § 1302.93 (C). It would cause the warranties to fail of their essential purpose, § 1302.93 (B), to so hold. I therefore uphold the warranties."
While both parties argue as to whether the contract in question is governed by the Ohio Uniform Commercial Code, and therefore by R.C. 1302.93, the trial court's decision relieves us the task of deciding this issue. The trial court made a factual finding that the condition had not been agreed to by HPC, and was therefore not binding upon it. Indeed, a review of the record fails to demonstrate that HPC was even aware of the condition, let alone that it had been made a part of the purchase agreement between HPC and Burrell. Because the record supports the trial court's finding that HPC did not accept and agree to the condition, we therefore need not speculate, as did the trial court, as to whether the condition would have been unconscionable had HPC been bound by it.
Appellant's fourth assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Cox, J., concurs.
Vukovich, J., concurs.
 APPROVED: ________________________ Gene Donofrio Judge