[Cite as *Howkins v. Walsh Jesuit High School*, 2013-Ohio-917.]

STATE OF OHIO          )               IN THE COURT OF APPEALS
                       )ss:            NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT       )

MICHAEL J. HOWKINS                     C.A. No.      26438

       Appellant

       v.                             APPEAL FROM JUDGMENT
                                       ENTERED IN THE
WALSH JESUIT HIGH SCHOOL               COURT OF COMMON PLEAS
                                       COUNTY OF SUMMIT, OHIO
       Appellee                        CASE No.    CV 2011 10 6086

DECISION AND JOURNAL ENTRY

Dated: March 13, 2013

---

BROGAN, Judge.

INTRODUCTION

{¶1}    Michael Howkins and Erin Ritchie divorced in 2005.  They have a son who Mr. Howkins began enrolling at Walsh Jesuit High School in 2008.  Although the son lived with Ms. Ritchie, both parents were allowed access to his school records and to attend his student activities.  This case arose because Walsh allegedly failed to notify Mr. Howkins about his son's important school events after it promised that it would.  Mr. Howkins sued the school for breach of contract, breach of the covenant of good faith, promissory estoppel, negligence, intentional infliction of emotional distress, and failure to comply with Section 3109.05.1 of the Ohio Revised Code.  He also asked the court to declare the school's duties and obligations to him. The trial court dismissed the action because it determined that it did not have subject-matter jurisdiction to consider Mr. Howkins's claim under Section 3109.05.1 and that the remainder of his complaint failed to state a claim.  Mr. Howkins has appealed, arguing that the court

incorrectly granted Walsh's motion to dismiss. We affirm in part because the trial court did not have jurisdiction to consider Mr. Howkins's claim under Section 3109.051 and it correctly determined that the complaint failed to state a claim for negligence and intentional infliction of emotional distress. We reverse in part because the court incorrectly concluded that Mr. Howkins had not stated a claim for breach of contract, breach of the covenant of good faith, or promissory estoppel.

BACKGROUND

{¶2} According to Mr. Howkins's amended complaint, his trouble with the school began in the summer of 2010 when the school scheduled his son for a sophomore interview. Mr. Howkins called the school to tell it that he wanted to attend the interview, but the office staff refused to tell him when it was scheduled. They told him to contact a vice-principal, but she did not return any of his phone calls. When the school held the interview without him, he protested, and it ended up holding another one. Mr. Howkins alleged that, after the incident, the school's principal and vice-principal apologized and "assured [him] that it would include his [contact information] in [his son's] school file and would add a note that [he] was also to receive notice of all events and activities involving [his son]."

{¶3} Mr. Howkins alleged that, a year later, his son was selected to receive a scholarship that would be awarded to him at a presentation in front of the entire school. Despite the school's promise to tell him about such events, it only told his ex-wife, so he did not know to attend. A few weeks later, his son was selected to be inducted into the National Honor Society. Once again, the school failed to tell him about the ceremony, so he was not able to witness the once-in-a-lifetime event.

{¶4} According to Mr. Howkins, when he found out that he missed the scholarship and honor-society ceremonies, he filed this action. A couple of months later, his son was scheduled to participate in a National Signing Day event at the school. The school, once again, failed to tell him about the event, but this time he learned about it from his son. At the event, each of the participants signed their letter of intent followed by having their picture taken with their teammates, coaches, and families. When it was his son's turn, however, his ex-wife announced that they were not going to take any pictures. Unbeknownst to him, she had conspired with her brother, who is a coach at Walsh, to take his son's pictures in a different location so they could exclude him from them.

{¶5} Following the picture-taking incident, Mr. Howkins amended his complaint. He alleged causes of action for breach of contract, breach of the covenant of good faith, promissory estoppel, negligence, intentional infliction of emotional distress, and breach of Ohio Revised Code Section 3109.051. He also sought a declaration of Walsh's duties and obligations to him. The school moved to dismiss his complaint, arguing that the court did not have jurisdiction to consider his claim under Section 3109.051 and that the rest of his allegations failed to state a claim. The trial court granted its motion. Mr. Howkins has appealed, assigning two errors.

ACCESS TO STUDENT ACTIVITIES

{¶6} Mr. Howkins's first assignment of error is that the trial court incorrectly determined that it did not have subject-matter jurisdiction to consider his claim under Section 3109.051 of the Ohio Revised Code. In his amended complaint, Mr. Howkins noted that Section 3109.051(J) requires schools to provide a non-residential parent with the same access to their child's student activities as the residential parent unless a court has determined that it would not be in the best interest of the child. The section provides that any school official who knowingly

fails to comply with it is in contempt of court. The trial court dismissed Mr. Howkins's claim, however, because it reasoned that only the court that issued the parental rights order has jurisdiction to hold a party in contempt of that order. The court also determined that the statute did not create a personal right that could be enforced independent of a contempt proceeding.

{¶7} Mr. Howkins has argued that the trial court incorrectly analyzed whether it had jurisdiction over his claim. He contends that his allegation was not that the school violated a provision of his divorce decree, but that it violated its statutory duty under Section 3109.051(J)(2) of the Ohio Revised Code. He argues that a claim under Section 3109.051 is not within the exclusive jurisdiction of the domestic relations division. The general division judge who was assigned to his case, therefore, had jurisdiction to consider his claim.

{¶8} The General Assembly has provided that the Summit County Common Pleas Court shall have 13 judges. R.C. 2301.02(C). It has assigned two of those judges to be "judges of the court of common pleas, division of domestic relations." R.C. 2301.03(I)(1). The domestic relations judges "shall have assigned to them and hear all divorce, dissolution of marriage, legal separation, and annulment cases that come before the court." R.C. 2301.03(I)(1). The judges shall also "have assigned to them and hear all cases pertaining to paternity, custody, visitation, child support, or the allocation of parental rights and responsibilities for the care of children and all post-decree proceedings arising from any case pertaining to any of those matters."

{¶9} Section 3109.051 of the Ohio Revised Code provides guidelines for resolving parenting time and visitation rights issues. It also sets out a non-residential parent's right to access to his or her child's day care center, school records, and student activities. R.C. 3109.051(H-J). Under Section 3109.051(J)(2), "all school officials and employees shall permit the parent of the child who is not the residential parent to have access to any student activity

under the same terms and conditions under which access is provided to the residential parent of the child, unless the residential parent has presented the school official or employee . . . with a copy of an order . . . that limits the terms and conditions under which the parent who is not the residential parent is to have access to student activities related to the child and the order pertains to the student activity in question." The question for this case is whether a parent's action to enforce his access under Section 3109.051(J)(2) is an action "pertaining to paternity, custody, visitation, child support, or the allocation of parental rights and responsibilities for the care of children and all post-decree proceedings arising from any case pertaining to any of those matters" under Section 2301.03(I)(1).

{¶10} Under Section 3109.051(J)(2), the requirement that school officials allow a non-residential parent access to school activities does not come into effect until "the issuance of an order under division (J)(1) of this section[.]" Subsection (J)(1) refers to two types of orders: an "order . . . allocating parental rights and responsibilities" and an "order containing the terms and conditions" under which a non-residential parent's access to school activities is restricted. Under subsection (J)(1), a court may issue an order restricting a non-residential parent's access to student activities "when a court issues an order or decree allocating parental rights and responsibilities[.]" Thus, regardless of which of the two orders the language "issuance of an order under division (J)(1)" in subsection (J)(2) refers to, the only time that Section 3109.051(J)(2) is relevant is in a case before the domestic relations division involving parental rights. Section 2301.03(I)(1) broadly provides that the judges of the domestic relations division of the Summit County common pleas court have exclusive jurisdiction over "all post-decree proceedings arising from any case pertaining" to the "allocation of parental rights and responsibilities[.]" We, therefore, conclude that an action by a non-residential parent to enforce

his right to access under Section 3109.051(J) is, necessarily, a post-decree proceeding arising from a case involving parental rights. Accordingly, under Section 2301.03(I)(1), only the judges of the domestic relations division of the Summit County common pleas court have jurisdiction to resolve a claim under Section 3109.051(J).

{¶11} Mr. Howkins has argued that, in *Price v. Price*, 16 Ohio App. 3d 93 (8th Dist. 1984), the Eighth District determined that, after an action has been fully litigated in the domestic relations court, the exclusive jurisdiction of that court is terminated. *Id.* at 95-96. From that point on, the domestic relations division has concurrent jurisdiction with the general division. *Id.* at 96. *Price* is distinguishable, however, because the jurisdiction of the domestic relations division of the Cuyahoga County common pleas court is different than the jurisdiction of the domestic relations division of the Summit County common pleas court. The jurisdiction of the Cuyahoga County court is governed by Section 2301.03(L)(1) of the Ohio Revised Code, and does not contain the "all post-decree proceedings arising from any case pertaining to any of those matters" language that appears in Section 2301.03(I)(1).

{¶12} Mr. Howkins has also argued that in *Thomas v. O'Connor*, 9th Dist. No. 19538, 2000 WL 296080 (Mar. 22, 2000), this Court agreed with *Price* that "after an action has been fully litigated in the domestic relations division and a judgment entry granting a divorce and providing for the division of property is filed, the exclusive jurisdiction of that division is terminated." *Id.* at *2. At the time this Court decided *Thomas*, however, the General Assembly had not added the "all post-decree proceedings" language that is currently found in Section 2301.03(I)(1). Accordingly, it also does not control this Court's decision.

{¶13} Because Section 2301.03(I)(1) limits jurisdiction over Mr. Howkins's Section 3109.051(J) claim to the domestic relations division of the Summit County common pleas court,

we conclude that the trial court correctly concluded that it did not have jurisdiction over his claim. Mr. Howkins's first assignment of error is overruled.

FAILURE TO STATE A CLAIM

{¶14} Mr. Howkins's second assignment of error is that the trial court incorrectly dismissed his breach of contract, breach of covenant of good faith, promissory estoppel, negligence, and intentional infliction of emotional distress counts for failure to state a claim under Civil Rule 12(B)(6). This Court reviews an order granting a Civil Rule 12(B)(6) motion to dismiss de novo. *Perrysburg Twp. v. City of Rossford*, 103 Ohio St. 3d 79, 2004-Ohio-4362, ¶ 5. Given the notice pleading requirements of the Ohio Rules of Civil Procedure, "a plaintiff is not required to prove his or her case at the pleading stage. Very often, the evidence necessary for a plaintiff to prevail is not obtained until [he] is able to discover materials in the defendant's possession." *York v. Ohio State Highway Patrol*, 60 Ohio St. 3d 143, 144-45 (1991). "Thus, to survive a motion to dismiss for failure to state a claim upon which relief can be granted, a pleader is ordinarily not required to allege in the complaint every fact he or she intends to prove[.]" *State ex rel. Hanson v. Guernsey County Bd. of Comm'rs*, 65 Ohio St. 3d 545, 549 (1991); *but see State ex rel. Cincinnati Enquirer v. Ronan*, 124 Ohio St. 3d 17, 2009-Ohio-5947, ¶ 7-8 (complaint correctly dismissed under Civil Rule 12(B)(6) because plaintiff did not sufficiently allege a required element of the claim although plaintiff would have had access to the relevant evidence). "A 'short and plain statement of the claim' will do." *Gall v. Dye*, 9th Dist. No. 98CA007183, 1999 WL 692440, *4 (Sept. 8, 1999), quoting Civ. R. 8(A).

{¶15} In considering a motion to dismiss under Civil Rule 12(B)(6), a court must consider only the facts alleged in the complaint and any material incorporated into it. *See* Civ. R. 12(B); Civ. R. 10(C); *State ex rel. Crabtree v. Franklin County Bd. of Health,* 77 Ohio St. 3d

247, 249 n.1 (1997). At this stage, the court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St. 3d 190, 192 (1988). "Then, before we may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts warranting a recovery." *Id.* "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Highway Patrol*, 60 Ohio St. 3d 143, 145 (1991).

## Breach of Contract

{¶16} The first count of Mr. Howkins's complaint was for breach of contract. "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 2002-Ohio-2985, at ¶ 16 (quoting *Perlmuter Printing Co. v. Strome Inc.*, 436 F. Supp. 409, 414 (N.D. Ohio 1976)).

{¶17} According to Mr. Howkins's amended complaint, Walsh expressly and impliedly "on its website, in letters, in the Student Handbook, and through the words and conduct of its administrators" offered to educate his son in the Catholic Jesuit tradition and instill in his son values such as fidelity, integrity, justice, and truth. It also offered to provide him notice of, access to, and the opportunity to participate school activities and events related to his son. Mr. Howkins alleged that he accepted Walsh's offer and performed his end of the bargain by enrolling his son as a student each year and paying his son's tuition and fees in full. He alleged that Walsh breached their agreement by failing to honor the values it espouses, failing to notify him about school events, and denying him access to and involvement in his son's activities.

{¶18} The trial court reviewed the documents that Mr. Howkins attached to his complaint and determined that they contained "nothing which creates an enforceable promise or contract term requiring Walsh to personally alert [Mr. Howkins] of his son's activities at Walsh." The court, however, does not appear to have analyzed whether the school's administrator's oral promises to Mr. Walsh formed part of their contract. It appears from the complaint that the school administrators' alleged promise occurred sometime between Mr. Howkins's son's sophomore and junior years. Mr. Howkins has argued that the promise was part of the consideration he received in exchange for continuing to enroll his son at Walsh and, therefore, was one of the terms of their contract.

{¶19} Walsh has argued that it is specious for Mr. Howkins to contend that his tuition payments included separate consideration for notice of school events. At this early stage, however, we "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St. 3d 190, 192 (1988). It is not out of the question that Walsh's administrators would promise Mr. Howkins to notify him about important school events in order to induce him to keep his son enrolled at Walsh. Although the Howkinses' divorce decree "anticipated" that the son would attend Walsh or Cuyahoga Valley Christian Academy for high school, there was nothing in the decree that prevented Mr. Howkins from enrolling his son at a different school if he chose.

{¶20} Upon review of the complaint, we conclude that it states all of the elements for breach of contract. Accordingly, we conclude that the trial court incorrectly granted Walsh's motion to dismiss with respect to count one.

## Covenant of Good Faith

**{¶21}** Mr. Howkins has next argued that the trial court incorrectly denied his claim for breach of the covenant of good faith. The court dismissed this claim because it determined that it was dependent on Mr. Howkins having pleaded a valid breach of contract claim. *See Laurent v. Flood Data Serv., Inc.*, 146 Ohio App.3d 392, 399 (2001). In light of the fact that we have determined that Mr. Howkins's complaint does, in fact, plead a claim for breach of contract, we conclude that the trial court incorrectly dismissed his complaint with respect to count two.

## Promissory Estoppel

**{¶22}** Mr. Howkins has also argued that the trial court incorrectly dismissed his promissory estoppel claim. "To succeed on a promissory estoppel claim, a party must show (1) a clear and unambiguous promise; (2) reliance on that promise; (3) reliance that was reasonable and foreseeable; and (4) damages caused by that reliance." *Current Source, Inc. v. Elyria City School Dist.*, 157 Ohio App. 3d 765, 2004-Ohio-3422, ¶ 31 (9th Dist.).

**{¶23}** In his complaint, Mr. Howkins alleged that the school "expressly and impliedly promised" that it would abide by his divorce decree, follow the values and principles it espoused in its student handbook and other correspondence, and provide him "advance notice of all school events and activities" affecting his son. He alleged that he "reasonably and foreseeably relied" on the school's promises to his detriment by enrolling his son at Walsh and paying his son's tuition and fees. Accepting those allegations as true, we conclude that they are sufficient to state a claim for promissory estoppel. The trial court incorrectly dismissed Mr. Howkins's complaint with respect to count three.

Negligence

**{¶24}** Mr. Howkins next argues that the trial court incorrectly granted Walsh's motion to dismiss his negligence claim. "To establish actionable negligence, one must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom." *Mussivand v. David*, 45 Ohio St. 3d 314, 318 (1989).

**{¶25}** The trial court dismissed Mr. Howkins's negligence claim because it determined that Walsh did not owe him a duty of care. "The existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand*, 45 Ohio St. 3d at 318. "There is no formula for ascertaining whether a duty exists." *Id*. "Typically, a duty may be established by common law, legislative enactment, or by the particular facts and circumstances of the case." *Chambers v. St. Mary's School*, 82 Ohio St. 3d 563, 565 (1998). "Duty ' . . . is the court's expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall.'" *Mussivand*, 45 Ohio St. 3d at 318, quoting *Weirum v. RKO General, Inc.*, 539 P.2d 36, 39 (Cal. 1975). "The common-law duty of due care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising, under the same or similar circumstances." *Id*. "A person is to exercise that care necessary to avoid injury to others." *Id*. at 319.

**{¶26}** Mr. Howkins argues that Walsh owed him a duty of care under the terms of his divorce decree, under Section 3109.051 of the Ohio Revised Code, because of its promotion of

Catholic values through its policies and literature, and because of its explicit promise to notify him of school events.

**{¶27}** Because Walsh was not a party to the divorce decree, the decree could not impose a duty on it to provide Mr. Howkins access to his son's school activities. *See Thomas Januzzi, Bradley, Giardini & Ignatz-Hoover Co. v. Ford Motor Co.*, 9th Dist. No. 89CA004603, 1990 WL 66910, *3 (May 16, 1990). Although Section 3109.051 may create such a duty, we have determined that the trial court did not have jurisdiction to consider a claim involving that section of the Ohio Revised Code. With respect to Walsh's written policies and its correspondence with Mr. Howkins, we conclude that, although the documents Mr. Howkins has submitted may create a contractual obligation between him and the school, they do not create a separate duty of care that Mr. Howkins may enforce via a negligence action.

**{¶28}** With respect to whether the parties' alleged contract created a duty that is enforceable in tort, our decision is guided by the Ohio Supreme Court's judgment in *Cooper v. Roose*, 151 Ohio St. 316 (1949). In that case, a tenant of an apartment building was leaning against a railing on the outside of the building when the railing gave way and caused her to fall. She sued her landlord for negligence because he had promised to repair anything on the outside of the building. The Ohio Supreme Court determined that the landlord was not liable for negligence because "a failure to act cannot be actionable negligence if there is no legal duty to act." *Id*. at 321. It also determined that the parties' contractual agreement could not "supply the duty to act which would justify holding [the landlord] liable in tort for failing to act[.]" *Id*. at 321, 322-23. In *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272 (1983), the Supreme Court reiterated that "it is well established in Ohio that it is no tort to breach a contract, regardless of motive." *Id*. at 276. Accordingly, just because Walsh may have breached its alleged contractual

obligation to instill Catholic Jesuit values in Mr. Howkins's son and give Mr. Howkins notice of his son's school events, a breach of those promises does not support a claim for negligence. The trial court correctly determined that count four of the amended complaint failed to state a claim.

Intentional Infliction of Emotional Distress

**{¶29}** Mr. Howkins's next argument is that the trial court incorrectly dismissed his intentional infliction of emotional distress claim. "In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgmt., Inc.*, 71 Ohio St. 3d 408, 410-11 (1994).

**{¶30}** The Ohio Supreme Court has explained that, for conduct to be "extreme and outrageous," "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 6 Ohio St. 3d 369, 374-75 (1983), abrogated in part on other grounds by *Welling v. Weinfeld*, 113 Ohio St. 3d 464, 2007-Ohio-2451, quoting 1 Restatement of the Law 2d, Torts, Section 73 (1965). Regarding "serious emotional distress," the Supreme Court has held that that

term "describes emotional injury which is both severe and debilitating." *Paugh*, 6 Ohio St. 3d 72, paragraph 3a of the syllabus. It "may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* "A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Id.* at 78.

{¶31} We do not need to analyze whether Walsh's conduct was extreme and outrageous because the mistreatment Mr. Howkins allegedly endured would not cause a reasonable person serious emotional distress. A person's inability to attend a scholarship and induction ceremony and to be deprived of the chance to be in a photograph at another ceremony is not the sort of harm that would cause a reasonable person such great mental distress that he would not be able to cope. Moreover, Mr. Howkins has not alleged sufficiently debilitating injuries as a result of the conduct. According to Mr. Howkins, because of Walsh's actions, he has suffered and continues to suffer "severe emotional distress, including being continually and constantly angry, upset, distraught, fearful, and anxious." In *Jones v. White*, 9th Dist. No. 18109, 1997 WL 669737 (Oct. 15, 1997), this Court determined that "[a]ffidavit testimony indicating Jones was 'distressed, upset, anxious, overwrought and was sobbing uncontrollably,' and her own self-serving statements that she is unable to concentrate, has insomnia, is agitated, and experiences muscle tension, nauseousness, vomiting and diarrhea, without more, does not rise to the required level of seriousness" to support a claim for intentional infliction of emotional distress. *Id.* at *9; *see also Cokely v. Smith*, 2d Dist. No. 21802, 2007-Ohio-5650, ¶ 20-23 (explaining that reasonable minds could not find that plaintiffs' insomnia, cantankerousness, mood changes, depression, and preoccupation with the event rose to the "level of mental anguish which no

reasonable man could be expected to endure."). We, therefore, conclude that the trial court correctly determined that count five of Mr. Howkins's amended complaint failed to state a claim for intentional infliction of emotional distress.

## DECLARATORY JUDGMENT

**{¶32}** Mr. Howkins's final argument is that the trial court incorrectly dismissed his request for a declaratory judgment. In his complaint, Mr. Howkins asked that the court declare "the rights, duties, and obligations under the parties' agreements and understandings . . . requiring [Walsh] to provide [him] notice of all events and activities involving [his son] and to comply with all rights and duties under the [Howkinses' divorce decree], Student Handbook, [Walsh's] representations, statements, and promises, and [Revised Code Section] 3109.051[.]"

**{¶33}** It is not disputed that Mr. Howkins's son graduated from Walsh in the spring of 2012. Accordingly, following oral argument in this case, we requested additional briefing on whether Mr. Howkins's declaratory judgment claim is moot. Mr. Howkins argues that his claim is not moot because he asked for more than just notice of his son's school events in his complaint. He also requested a declaration of all of Walsh's rights and duties relating to his claims against Walsh. According to Mr. Howkins, even though his claims are not dependent on the findings he seeks through a claim for declaratory relief, his request is not moot because it involves some of the same facts and inquiries as his other claims. He also argues that, even if his claim is moot because his son graduated, this Court should still address his claim under an exception to the mootness doctrine. He contends that school officials' compliance with Section 3109.051 is an issue that affects thousands of students and, therefore, "involves a matter of public or great general interest." *In re Suspension of Huffer*, 47 Ohio St. 3d 12, 14 (1989).

**{¶34}** Upon review of the record, we conclude that Mr. Howkins's declaratory-judgment claim is moot. With respect to his declaratory judgment claim, Mr. Howkins requested only prospective relief. Because his son has graduated from Walsh, however, it no longer owes any duties to him. It is also impossible for Walsh to notify him of any future school events involving his son. We also conclude, because the trial court does not have jurisdiction to consider issues under Section 3109.051 of the Ohio Revised Code, there is no reason to find that a public-interest exception to the mootness doctrine applies. Accordingly, the trial court correctly dismissed count seven of the amended complaint. Mr. Howkins's second assignment of error is sustained in part and overruled in part.

## CONCLUSION

**{¶35}** The trial court correctly determined that it did not have jurisdiction to consider Mr. Howkins's claim under Section 3109.051(J) of the Ohio Revised Code. It also correctly determined that his amended complaint failed to state a claim for negligence or intentional infliction of emotional distress. Mr. Howkins's declaratory-judgment claim is moot. The court incorrectly dismissed Mr. Howkins's breach of contract, breach of covenant of good faith, and promissory estoppel claims. The judgment of the Summit County common pleas court is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____

JAMES BROGAN
FOR THE COURT


MOORE, P. J.
CARR, J.
CONCUR.

(Brogan, J., retired, of the Second District Court of Appeals, sitting by assignment pursuant to §6(C), Article IV, Constitution.)


APPEARANCES:

SCOTT H. KAHN and GEORGE V. PILAT, Attorneys at Law, for Appellant.

DAVID KANE SMITH, LINDSAY F. GINGO and MIRIAM PEARLMUTTER, Attorneys at Law, for Appellee.

CHRISTOPHER A. TIPPING and MICHAEL T. ALTVATER, Attorneys at Law, for Appellee.