**[Cite as *Midwest Tel., Inc. v. Speelman Elec., Inc.*, 2014-Ohio-1034.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MIDWEST TELEPHONE

    Appellant

    v.

SPEELMAN ELECTRIC

    Appellee

C.A. No.     26881

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2011-08-4529

DECISION AND JOURNAL ENTRY

Dated: March 19, 2014

MOORE, Presiding Judge.

{¶1} Plaintiff-Appellant, Midwest Telephone, Inc. ("Midwest"), appeals from the March 19, 2013 judgment entry of the Summit County Court of Common Pleas. We affirm.

I.

{¶2} This matter stems from an alleged agreement between Midwest and Defendant-Appellee, Speelman Electric, Inc. ("Speelman"), regarding construction at the Buchtel/Perkins Community Learning Center Project. Midwest claims that Speelman agreed to subcontract with it for technological/electrical services. In reliance upon this agreement, Midwest asserts that it secured a performance bond and purchased supplies/products. However, Speelman ultimately hired another company to provide these services, and Midwest did not receive the bid.

{¶3} In August of 2011, Midwest filed a complaint against Speelman alleging (1) breach of contract, (2) promissory estoppel, and (3) bad faith. The complaint was originally filed in Trumbull County and later transferred to Summit County. Speelman filed an answer to the

complaint, along with a motion to dismiss, or in the alternative, a motion for a more definite statement. In response to Speelman's motions, Midwest filed a pleading and attached two supporting exhibits: (A) a purchase order in the amount of $93,026.00, along with an email exchange between Midwest and Speelman regarding the Buchtel/Perkins project, and (B) an invoice in the amount of $9,030.00 for a performance payment bond, as well as related documents.

{¶4} In denying Speelman's motions, the trial court relied only upon the allegations set forth in the complaint, and did not consider the exhibits attached to Midwest's responsive pleading. The trial court did, however, order Midwest to file an amended complaint within fourteen days to include any documents supporting its breach of contract claim. The record indicates that Midwest never filed an amended complaint as ordered by the trial court. Instead, Midwest moved for clarification, asking the trial court whether it still desired an amended complaint to be filed because the documents supporting its breach of contract claim were already attached to its prior pleading.[1]

{¶5} After the parties concluded discovery, Midwest filed a motion for summary judgment seeking damages for the cost of the performance bond, the cost of supplies/products, and any lost profits it may have incurred due to Speelman's alleged breach. Further, the record indicates that Midwest did not attach any supporting Civ.R. 56(C) evidence to its summary judgment motion.

{¶6} Speelman filed a cross-motion for summary judgment seeking either judgment in its favor, and/or the involuntary dismissal of Midwest's complaint. In support of its summary

---

[1] We note that the trial court did not journalize a response to Midwest's motion for clarification.

judgment motion, Speelman attached: (1) the unsigned affidavit of Richard Speelman, President of Speelman Electric, Inc. (2) a letter notifying Midwest that it hired U.S. Communications as the subcontractor for the technology/electrical services on the Buchtel/Perkins project, (3) the unsigned affidavit of Mike Yaich, the Buchtel/Perkins project manager/estimator, and (4) Midwest's responses to interrogatories and requests for production of documents. Speelman later filed the original signed and notarized affidavits with the trial court.

{¶7} Midwest then filed (1) an amended motion for summary judgment, which included exhibits, and (2) a response to Speelman's motion for summary judgment. We note that Midwest's response to Speelman's summary judgment motion failed to set forth any separate arguments in opposition, but, instead, incorporated the arguments made in its own motion for summary judgment. Speelman also filed a brief in opposition to Midwest's motion/amended motion for summary judgment, and a reply brief in support of its own motion for summary judgment.

{¶8} The trial court granted Speelman's motion for summary judgment, and denied Midwest's motion for summary judgment. In doing so, the trial court stated that "the evidence attached to Midwest's motion for summary judgment includes alleged emails between the two companies. None of these documents are properly authenticated by affidavit or other admissible evidence and are therefore stricken and will not be considered as supporting evidence." Further, the trial court stated that Midwest presented no supporting evidence for breach of contract, promissory estoppel, or bad faith. The trial court concluded that Speelman "has set forth evidence and testimony that establishes there are no genuine issues of material fact and that [] [Speelman] is entitled to summary judgment as to all claims asserted by Midwest []."

{¶9} Midwest appealed, raising one assignment of error for our review.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED ERROR IN SUSTAINING [SPEELMAN'S] MOTION FOR SUMMARY JUDGMENT[.]

{¶10} In its sole assignment of error, Midwest argues that the trial court erred in sustaining Speelman's motion for summary judgment because Midwest's "response attached exhibits sufficient to demonstrate that genuine issues of material fact were present as to whether or not the parties entered into a contract and whether [Speelman] breached the same." Further, Midwest argues that its response set forth a "colorable claim" for the alternative theory of promissory estoppel.[2] Because Midwest has not assigned as error the trial court's denial of its motion for summary judgment, we will limit our discussion accordingly.

{¶11} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶12} Pursuant to Civ.R. 56(C), summary judgment is proper only if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327 (1977).

{¶13} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue

---

[2] Midwest has not argued that the trial court improperly struck the exhibits attached to its amended motion for summary judgment.

as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Instead, by affidavit or as otherwise provided in this rule, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E); *see also State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶14} However, the non-moving party's reciprocal burden does not arise until after the moving party has met its initial evidentiary burden. To do so, the moving party must set forth evidence of the limited types enumerated in Civ.R. 56(C), specifically, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]" Civ.R. 56(C) further provides that "[n]o evidence or stipulation may be considered except as stated in this rule."

{¶15} In its complaint, Midwest alleged that, in October of 2010, it entered into an agreement with Speelman to provide technology services for the Buchtel/Perkins Community Learning Center Project. In reliance upon that agreement, Midwest claimed that it secured a performance bond and purchased products. Midwest further asserted that Speelman breached the agreement by contracting with another company for the same services, and that Speelman acted in bad faith (1) in negotiating the agreement, and (2) in utilizing Midwest's information to secure another bid.

**{¶16}** "'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Howkins v. Walsh Jesuit High School*, 9th Dist. Summit No. 26438, 2013-Ohio-917, ¶ 16, quoting *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16. "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik* at ¶ 16, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991).

**{¶17}** Further, "[t]o succeed on a promissory estoppel claim, a party must show (1) a clear and unambiguous promise; (2) reliance on that promise; (3) reliance that was reasonable and foreseeable; and (4) damages caused by that reliance." *Howkins* at ¶ 22, quoting *Current Source, Inc. v. Elyria City School Dist.,* 157 Ohio App.3d 765, 2004-Ohio-3422, ¶ 31 (9th Dist.).

**{¶18}** The Supreme Court of Ohio has described bad faith as "'a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. * * * .'" *Myers v. Steiner*, 9th Dist. Summit No. 25166, 2011-Ohio-576, ¶ 17, quoting *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs,* 127 Ohio St.3d 202, 2010-Ohio-5073, ¶ 8.

**{¶19}** Here, in its summary judgment motion, Speelman argued that it is entitled to judgment as a matter of law on Midwest's claims for breach of contract, promissory estoppel and bad faith because no express or implied contract existed between the parties with regard to the Buchtel/Perkins project, and Speelman made no promises or misrepresentations to Midwest. To

satisfy its *Dresher* burden, Speelman attached the affidavits of Richard Speelman and Mike Yaich, along with a letter notifying Midwest that it hired U.S. Communications to perform the services, and Midwest's responses to interrogatories and requests for production of documents.

**{¶20}** Richard Speelman, president of the company, attested that: (1) Speelman was the prime contractor for the Buchtel/Perkins project with regard to the electrical/fire alarm/technology bid package; (2) Midwest was one of several technology subcontractors that submitted a bid for the technology portion of the electrical work; (3) in October of 2010, Midwest sent a written proposal to Speelman for a technology package in the amount of $670,000.00; (4) Speelman never accepted Midwest's proposal, verbally or in writing, nor did it instruct Midwest to order and/or purchase materials; (5) no contract was entered into between Speelman and Midwest with respect to the Buchtel/Perkins project; (6) Speelman never issued Midwest a purchase order, nor did it approve any materials allegedly purchased by Midwest for this project; (6) in December of 2010, Speelman sent a letter to Midwest indicating that it chose another subcontractor to provide the technology package for the Buchtel/Perkins project; (7) Speelman never promised to hire Midwest for the Buchtel/Perkins project or to reimburse it for a performance bond or materials; and (8) Speelman has not made any misrepresentations to Midwest regarding this project, nor has it acted in bad faith.

**{¶21}** Mike Yaich, project manager/estimator for Speelman, attested that: (1) Speelman never instructed Midwest to order/purchase materials for the Buchtel/Perkins project; (2) no contract, verbal or in writing, ever existed between Speelman and Midwest with respect to this project; (3) Speelman was instructed that all contractors and subcontractors for this project must be signatories to the Project Labor Agreement; (4) between October and November of 2010, Speelman and Midwest communicated regarding whether Midwest was a signatory to the Project

Labor Agreement; (5) Speelman and Midwest agreed to meet the week of November 8, 2010, in order to discuss the Project Labor Agreement and other issues; (6) Midwest cancelled the meeting due to unresolved issues with the Project Labor Agreement; (7) in a telephone conversation, Midwest specifically inquired whether it should order materials for this project, and was specifically told by Yaich not to order any materials until it received a purchase order from Speelman, and approval of its material submittals; (8) Speelman never issued a purchase order to Midwest, nor did it approve any materials for the project; and (9) Speelman never made any promises or misrepresentations to Midwest regarding this project, nor did Speelman act in bad faith.

{¶22} Additionally, the letter dated December 15, 2010, confirmed that Speelman reviewed Midwest's bid, along with other bids, and determined that U.S. Communications was better suited for the Buchtel/Perkins project.

{¶23} Based upon the affidavits of Mr. Speelman and Mr. Yaich, along with the December 15, 2010 letter to Midwest, we conclude that Speelman met its initial *Dresher* burden by pointing to evidentiary materials showing that there is no genuine issue as to any material fact, and that Speelman is entitled to judgment as a matter of law on the claims of breach of contract, promissory estoppel, and bad faith set forth in Midwest's complaint. *See Dresher*, 75 Ohio St.3d at 293. Through its evidence, Speelman demonstrated that Midwest failed to prove the elements necessary for breach of contract, promissory estoppel, and bad faith because (1) Speelman never accepted Midwest's bid offer for technology/electrical services on the Buchtel/Perkins project, (2) Speelman made no promises to Midwest regarding whether Midwest would ultimately be hired for the project, nor did it instruct Midwest take out a performance

bond or order supplies, and (3) Speelman did not negotiate in bad faith with Midwest during the bid process.

**{¶24}** The *Dresher* burden then shifted to Midwest to set forth specific facts demonstrating that a "genuine triable issue" existed. *State ex rel. Zimmerman*, 75 Ohio St.3d at 449; *see* Civ.R. 56(E). In response to Speelman's motion, Midwest rested upon the arguments set forth in its own amended motion for summary judgment, which were based solely upon the exhibits attached thereto. However, as explained above, the trial court struck these exhibits from the record because of their failure to comply with the evidentiary requirements set forth in Civ.R.56(C). As such, Midwest did not demonstrate the existence of any genuine triable issues, and failed to meet its reciprocal *Dresher* burden.

**{¶25}** Therefore, even in construing the facts in a light most favorable to Midwest, we cannot say that the trial court erred in granting Speelman's motion for summary judgment on the claims of breach of contract, promissory estoppel, and bad faith.

**{¶26}** Accordingly, Midwest's assignment of error is overruled.

III.

**{¶27}** In overruling Midwest's sole assignment of error, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

BELFANCE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

ROBERT J. ROHRBAUGH, Attorney at Law, for Appellant.

MARK BERNLOHR and ALAN M. MEDVICK, Attorneys at Law, for Appellee.